## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Apr 16 2020, 8:49 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Andrew Bernlohr
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General

Samuel J. Dayton
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| J.A.,<br>*Appellant-Respondent,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Petitioner* | April 16, 2020<br><br>Court of Appeals Case No.<br>19A-JV-2350<br><br>Appeal from the<br>Marion Superior Court<br><br>The Honorable<br>Marilyn Moores, Judge<br><br>The Honorable<br>Geoffrey Gaither, Magistrate<br><br>Trial Court Cause No.<br>49D09-1902-JD-213 |

**Vaidik, Judge.**

# Case Summary

[1] J.A. appeals his adjudication as a juvenile delinquent based on the juvenile court's finding that he committed acts that would be Level 3 felony child molesting and Level 4 felony child molesting if committed by an adult. He argues that the evidence is insufficient. Because we find the evidence is sufficient, we affirm.

# Facts and Procedural History

[2] On Thanksgiving Day in 2018, eight-year-old E.T. went to his uncle's house to celebrate. When E.T. arrived, he saw that his eleven-year-old nephew, J.A., was there too. Although E.T. was younger than J.A., E.T. was J.A.'s uncle. After the family finished eating Thanksgiving dinner, E.T. and J.A. went outside to play.

[3] After playing outside, J.A. went with E.T., E.T.'s mother, and E.T.'s grandmother to a nearby CVS to rent some movies from Redbox. While E.T.'s mother and grandmother were out of the car looking for movies, J.A. used his phone to show E.T. some "bad videos, porn or something." Tr. p. 14. When E.T.'s mother and grandmother returned to the car, J.A. turned off the videos, and the family drove to E.T.'s house.

[4] At E.T.'s house, J.A., E.T., and E.T.'s mother went to E.T.'s bedroom and watched the first movie and began watching the second. During the second movie, E.T.'s mother left and went to the basement to wash clothes. E.T.

turned on his bedroom light and began playing with his new cowboy toys. J.A. then turned to E.T. and asked, "can we have sex?" *Id.* at 16. E.T. said "no," but J.A. "just keep askin'." *Id.* at 17. E.T. then left and went into the living room. E.T.'s mother found him in the living room and told him to go back into his bedroom. E.T.'s mother went with E.T. to his bedroom and stayed to watch more of the second movie with E.T. and J.A., but eventually she turned off the bedroom light and left.

Once E.T.'s mother was gone, J.A. "started asking [to have sex] again." *Id.* at 18. Eventually, E.T. said "yeah." *Id.* E.T. and J.A. kept their clothes on but pulled their pants down about "an inch" below their "butt." *Id.* at 20. E.T. would later testify that they then started "having sex." *Id.* at 19. At some point, E.T.'s penis was touching J.A.'s "butt," and at another point, J.A.'s penis was touching E.T.'s "butt." *See id.* at 20. E.T. also recalled that while they were having sex, J.A. "put his penis in [E.T.'s] bottom" and that E.T.'s "bottom hurt" "a little bit." *Id.* at 21-23.

At some point, E.T.'s mother returned to E.T.'s bedroom and saw what was happening. J.A. rolled off the bed and then E.T.'s mother "started whooping both [E.T. and J.A.]." *Id.* at 19. E.T.'s brother, who had been upstairs, overheard what was going on, came downstairs, and "started whooping [J.A.]" *Id.* at 23. E.T.'s mother called J.A.'s mother. When J.A.'s mother arrived, she had a "rubber bat" and beat J.A. *Id.* at 23. J.A.'s mother told J.A. to say that he was sorry, which he did, and then J.A. and his mother left. *See id.* at 24.

[7] E.T.'s mother then took E.T. to Riley Hospital for Children to be evaluated. *See* Appellant's App. Vol. II p. 15. A social worker at Riley contacted the Department of Child Services to report "a child molest." *Id.* Three days later, E.T. was interviewed by a forensic child interviewer. After that interview, the case was assigned to an IMPD detective. The detective interviewed E.T.'s mother, who said that when she returned to E.T.'s bedroom, "she saw [J.A.'s] naked butt and [E.T.] pulling his pants up." *Id.* at 16. E.T.'s mother told the detective that when she asked E.T. what was going on, E.T. said "[J.A.] put his penis in my butt." *Id.* The detective also interviewed J.A.'s mother, who said that when she arrived at E.T.'s house, J.A. "told her that he saw something on TV and he was curious. He had talked about it with [E.T.] and told [E.T.] to pull his pants down." *Id.* J.A.'s mother told the detective that J.A. said that "he couldn't get his penis into [E.T.'s] butt, so they were just 'humping.'" *Id.* at 16-17. J.A.'s mother also allowed the detective to interview J.A. J.A. told the detective that he "saw a commercial of two men in bed together and a late night movie of two men having sex over a desk" and that he was "curious and wanted to try it because the look on the men's faces made it look like they were having fun." *Id.* at 17. J.A. also told the detective that he "tried to put his penis in [E.T.'s] butt," but he didn't "think his penis went inside [E.T.'s] butt." *Id.* J.A. said to the detective that he "regrets what he did and wishe[d] that he could take it back." *Id.*

[8] In February 2019, the State filed a petition alleging J.A. to be a delinquent child for committing two counts of child molesting, one for performing or submitting

to an act involving J.A.'s penis and E.T.'s anus (a Level 3 felony if committed by an adult) and one for touching or fondling (a Level 4 felony if committed by an adult). *Id.* at 18. After the fact-finding hearing, where E.T. and the detective both testified, the juvenile court entered a true finding on each count. In September 2019, the juvenile court held a dispositional hearing and ordered that J.A. be placed on probation. Some of the conditions of his probation included that J.A. complete a psycho-sexual education program and that J.A. have no contact with E.T.

[9] J.A. now appeals.

# Discussion and Decision

[10] J.A. contends that the evidence is insufficient to support the juvenile court's true findings. When reviewing whether the State's evidence was sufficient to meet its burden, our standard is familiar. *D.P. v. State*, 80 N.E.3d 913, 915 (Ind. Ct. App. 2017). We view the facts and the reasonable inferences from them in the light most favorable to the true finding. *Id.* We neither reweigh the evidence nor re-evaluate witness credibility. *Id.* We will affirm unless no reasonable fact-finder could have found the elements of the crime proven beyond a reasonable doubt. *Id.*

[11] J.A. first contends that the evidence is insufficient to support a true finding for Level 3 felony child molesting if committed by an adult. To sustain the true finding that J.A. committed an act that would constitute Level 3 felony child

molesting if committed by an adult, the State was required to prove beyond a reasonable doubt that J.A., with a child under fourteen years of age, E.T., knowingly or intentionally performed or submitted to sexual intercourse or other sexual conduct. Ind. Code § 35-42-4-3(a); Appellant's App. Vol. II p. 18. Indiana Code section 35-31.5-2-221.5 defines "other sexual conduct" as "an act involving: (1) a sex organ of one (1) person and the mouth or anus of another person; or (2) the penetration of the sex organ or anus of a person by an object." The State is not required to introduce evidence of penetration to establish "other sexual conduct." *See Wisneskey v. State*, 736 N.E.2d 763, 764 (Ind. Ct. App. 2000) ("other sexual conduct" was formerly "deviate sexual conduct," but the definition remains the same). Instead, the State need only establish that the delinquent committed a sex act with his penis involving the child's anus. *See id.*

[12] J.A. argues that the State's evidence only shows that "J.A. rubbed his penis against E.T.'s buttocks" and that "[t]here is no additional evidence that demonstrates, beyond a reasonable doubt, that J.A.'s penis came into contact with E.T.'s anus." Appellant's Br. p. 9. We disagree. E.T. testified that J.A. "put his penis in [his] bottom." Tr. pp. 21-22. E.T. also said that it hurt "a little bit" when J.A. did so. *Id.* at 21. Moreover, as the State points out, the evidence shows "that contact with E.T.'s anus was what J.A. intended to accomplish because J.A. was attempting to replicate what he saw in a pornographic video." Appellee's Br. p. 12; *see also* Tr. p. 17. This is all sufficient evidence for the juvenile court to find that J.A.'s penis made contact with E.T.'s anus.

[13] J.A. next asserts that the evidence is insufficient to support a true finding for Level 4 felony child molesting if committed by an adult. To sustain the true finding that J.A. committed an act that would constitute Level 4 felony child molesting if committed by an adult, the State was required to prove beyond a reasonable doubt that J.A., with a child under fourteen years of age, E.T., performed or submitted to fondling or touching with the intent to arouse or satisfy the sexual desires of either E.T. or himself. Ind. Code § 35-42-4-3(b); Appellant's App. Vol. II p. 18. We have held that it is unreasonable to infer intent to satisfy or arouse sexual desires solely from the fact that a child intentionally touched another child's genitals given that children may experiment by looking at and touching another child's genitals. *D.P.*, 80 N.E.3d at 916. Accordingly, we said that other circumstances must be present that indicate such intent. *Id.*

[14] J.A. argues that the State failed to establish "that J.A.'s actions were undertaken with the specific intent to satisfy either his or E.T.'s sexual desires." Appellant's Br. p. 12. Instead, J.A. claims that the evidence shows that J.A. "was acting out something he was curious about and that he thought was fun" and that "[t]here's nothing in the record to suggest [J.A.] even had sexual desires." *Id.* We disagree. The circumstantial evidence is sufficient to establish that J.A. touched E.T. with the intent to arose or satisfy his or E.T.'s sexual desires. First, the ages of the children are relevant. *See T.G. v. State*, 3 N.E.3d 19, 25 (Ind. Ct. App. 2014), *trans. denied*. J.A. was eleven years old and older than E.T., who was eight. The purpose of the child-molesting statute "is to

prohibit the sexual exploitation of children by those with superior knowledge or experience who are therefore in a position to take advantage of children's naivety." *Id.* Although a three-year age difference is not huge, the evidence shows that J.A. had superior knowledge—demonstrated by his ability to access pornographic videos with his cell phone—and was in a position to take advantage of E.T.'s naivety as E.T.'s older family member. Second, J.A. showed E.T. pornographic videos before repeatedly asking E.T. to have sex. Third, J.A. told the detective that he "saw a commercial of two men in bed together and a late night movie of two men having sex over a desk" and that he was "curious and wanted to try it because the look on the men's faces made it look like they were having fun." Tr. p. 17. Fourth, J.A. told the detective that he "tried to put his penis in [E.T.'s] butt," but he didn't "think his penis went inside [E.T.'s] butt." *Id.* Fifth, J.A.'s mother told the detective that J.A. said that "he couldn't get his penis into [E.T.'s] butt, so they were just 'humping.'" *Id.* at 16-17. Given all these circumstances, a reasonable fact-finder could find beyond a reasonable doubt that J.A. touched or fondled E.T. with the intent to arouse or satisfy his or E.T.'s sexual desires. Accordingly, we affirm the juvenile court's delinquency adjudication.

[15] Affirmed.

May, J., and Robb, J., concur.